1092

D. Frederick Burnett, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 55032, 58768.   Promulgated January 18, 1935.

*Charles C. Trelease, Esq.*, for the petitioner.
*Frank M. Thompson, Esq.*, for the respondent.

OPINION.

Morris: These duly consolidated proceedings are for the redetermination of deficiencies in income tax of $2,114.88 and $234 for the taxable years 1928 and 1929, respectively, presenting for consideration the sole question whether income received by the petitioner in the said years from the State of New Jersey for services performed by him for the joint legislative commission created under a joint resolution of the legislature of that state for the investigation of the department of banking and insurance, et cetera, is exempt from taxation, it having been received as an employee of the State of New Jersey for services rendered in connection with the exercise of an essential governmental function of that state.

In February 1928, the petitioner, a resident and member of the bar of the State of New Jersey, at that time engaged in the practice of the law in partnership with certain other individuals, was informally offered and accepted the appointment as general counsel to a joint legislative commission created pursuant to Joint Resolution No. 1, Laws of 1928, to conduct an investigation of the department of banking and insurance concerning the issuance or rejection by the commissioner of charters to trust companies, state banks, and building and loan associations and into any and all other matters relating to that department.   Joint Resolution No. 16 of said laws conferred additional authority upon the commission to investigate all matters pertaining to mergers and consolidation of banks and trust companies and the purchase of control thereof, and to investigate the subject of investment trusts and all matters appertaining thereto. The commission, composed of six members, three being state sen-

ators, all of whom were lawyers, was empowered to employ necessary legal, clerical, and other assistants. The sums of $15,000 and $25,000 were appropriated by the respective resolutions for carrying out their purposes.

Petitioner's duties as general counsel to the commission involved interviewing people, drafting subpoenas, rendering oral opinions to the commission, occasional seizures of records, examination of books and accounts in preparation for public hearings, which were held by the commission at the State House once or twice weekly, at which witnesses were called and interrogated by the commissioners or by the petitioner for the commission upon the subject matter of the investigation, also the preparation of proposed corrective legislation, and drafting the report of the commission at the conclusion of such hearings. The petitioner attended all public hearings. The commission terminated its existence about April 1, 1929, and rendered a report of its activities showing that besides executive sessions it had held 33 public hearings and had taken about 5,500 pages of testimony, in which report it made certain recommendations affecting the matters investigated. The petitioner discovered shortly after the investigation started that the work could not be conducted in his office, so he selected certain assistants, an executive secretary, who was assisted by his regular secretary and a public accountant, who were, as was the petitioner, paid from the state treasury. The foregoing comprised the permanent staff of the commission. Other temporary employees—another public accountant, detectives, and minor investigators—were employed from time to time.

Neither the term of the petitioner's engagement with the commission nor his compensation were fixed. There was no restraint placed upon the acceptance of other concurrent employment nor was any mention made of the time that he was required to devote to the investigation—that was left to his discretion—it being contemplated, however, that the work of the investigation should be given the " first order of the day." Actually, however, he devoted more than 95 percent of his time to the work.

Generally, with few exceptions, the matter of subpoenaing witnesses before the commission was left to the discretion of the petitioner, without interference. The commission directed that the different investigations be conducted and the petitioner would proceed accordingly. When differences of opinion arose the judgment of the commission controlled.

Though the law partnership of which the petitioner was a member continued during the time the petitioner was engaged in these investigations, he turned over nearly all of his private practice to

1094

his partners. His distributive shares of its income from that source were:

1927 _____ $10, 734. 20
1928 _____ 261. 53
1929 _____ 7, 543. 73

Petitioner personally received all of the compensation for services rendered the commission.

At the time of becoming general counsel for the commission the petitioner occupied the Chair of Corporations at the New York University Law School, from which he was granted a leave of absence until the conclusion of his appointment, at which time he resumed his activities. He reported net income from this source in his tax return for 1928 of $3,909.92.

The respondent held that the petitioner was not an employee of the State of New Jersey and increased his taxable income by the amount of compensation received by him therefrom.

The petitioner contends that the compensation received by him from the State of New Jersey was for services rendered in connection with the exercise of an essential governmental function of the state, that he was an employee of the state and that such compensation is exempt from tax. The conclusion which we feel constrained to reach, in any event, renders it unnecessary to determine whether the joint legislative commission was an essential governmental function of the State of New Jersey, so that we shall confine ourselves to the question whether he was an employee of the state within the meaning of that word as defined in the many decisions of this Board and of the courts.

The petitioner lays considerable stress upon the "right of control" vested in and retained by the commission, which he regards as the "true determining factor" of whether or not he was an "employee" as distinguished from an independent contractor. He quotes from that part of the decision in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, where the Court says, "The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them" and where it says, "control or right of control by the employer * * * characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor." He also refers to *Singer Manufacturing Co.* v. *Rahn*, 132 U. S. 518, where the Court says, "and the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.'"

The petitioner in comparing the facts of his own case with those of *Metcalf & Eddy* v. *Mitchell*, *supra*, alludes to that reference by the Court to the fact that the taxpayers there were " free to accept any other concurrent employment " and to the fact that he, the petitioner, was required to devote his entire time, if necessary, to the work of the commission. The fact that he may or may not have been required to devote his entire time to the work of the commission is by no means dispositive. Respecting this phase of the argument we said in *Edwin J. Raber*, 20 B. T. A. 975, that:

* * * We think that neither the amount of time devoted to performing legal services, nor the place where they are performed, is a controlling point in determining whether an attorney is an employee or an independent contractor. An independent contractor may devote his entire time for a period to a special job and still fall short of being an officer or employee of a State or political subdivision thereof. In other words, it is possible for an officer or employee to accept outside employment without changing the character of the services rendered by him, but it does not follow that one who is engaged to render service in a particular transaction and who must devote his entire time to such employment for the duration thereof, becomes an officer or employee within the meaning of the statute.

As a matter of fact we are not convinced that his arrangement with the commission even compelled him to devote his entire time to its work. It was more, as the petitioner himself testified, a question " of getting the work through."

The petitioner also lays great stress upon his testimony that where a difference of opinion between him and the commission arose the decision of the commission was final, as evidencing the fact that control was reserved whether actually exercised by the commission or not. Quite naturally the commission did not surrender all of its power of ultimate decision to the petitioner, for otherwise there would have been little or no justification for its existence. It was established by the legislature as an inquisitorial body performing a quasi-judicial function, therefore, conclusions to be drawn from the matters presented to it or decisions to be rendered based thereon were basically the responsibility of the commission and could not have been delegated to another. We do not construe this testimony to mean, nor does the petitioner in fact say, that his actions in the preparation of matters to be presented to the commission were controlled by it. What the petitioner actually meant, as we construe his testimony, was that after a matter had been prepared by him and presented to the commission the construction to be placed upon that testimony or ultimate decisions to be rendered respecting it rested with the commission. This construction is borne out by the petitioner's own testimony where, in testifying upon the subject of the degree of control exercised by the commission over his work, he said, " but to say that they knew what I was doing, of course they did not."

Among the other arguments advanced, all of which we need not attempt to answer, the petitioner refers to the language of the court in *Underwood* v. *Commissioner*, 56 Fed. (2d) 67, that " There is no testimony in the record to indicate that the members of the committee were possessed of technical architectural and engineering skill; and it is a fair inference under the circumstances that the work which the architect was employed to do was beyond their capacity to direct, either in method or in detail ", and the fact, in the instant case, that the members of the commission were experienced in public matters, whereas the petitioner here had had no previous experience at all in such matters, from which he would have us infer, as in that case, the retention of control by the commission. The force of this argument is immediately spent when we consider that the petitioner was a lawyer, that the proceedings before the commission were, as the record shows, similar to a trial in court, that the bulk of his work was gathering evidence for submission to the commissioners at those proceedings, work with which any lawyer should be perfectly familiar, and that such investigations were into the affairs of corporations, a subject in which he was no doubt an outstanding authority, having occupied the Chair of Corporations at the New York University Law School for over twenty years.

The petitioner was engaged by the commission to accomplish certain objects specified and limited by the joint resolutions of the legislature creating the commission. While no doubt the commissioners insisted that the investigation be given the right of way, so to speak, there was no restriction upon the amount of time to be devoted thereto by the petitioner. True he was told what to do, that is, that he should proceed to investigate certain institutions named by the commission, but we do not understand that he was told how those investigations should be made. Indeed we are reasonably convinced that he was permitted to proceed without any substantial interference. The duration of his employment was limited by the objects specified. It so happened that the investigation consumed approximately thirteen months. There was no fixed compensation for his services as would normally be found where the relation of master and servant exists. In fact the petitioner had worked for nearly two or three months when he inquired " if the ghost ever walked " and as a result he then received something like $10,000 and other sums from time to time thereafter. The fact that he entered into no written contract makes him none the less an independent contractor.

To attempt to answer all of the arguments advanced by the petitioner or to discuss all of the cases cited by him would unduly prolong our discussion but would not change our conclusion. Suffice

to say that upon the facts of record, set forth hereinabove, we are satisfied that the petitioner was an independent contractor as distinguished from an employee and that, therefore, the compensation received by him was not exempt from taxation, within the principle enunciated in *Metcalf & Eddy* v. *Mitchell, supra,* and the many decided cases to the same effect.

*Judgment will be entered for the respondent.*